UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA H.,<br><br>                      Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security[1],<br><br>                      Defendant. | Case No.:  24-cv-121-LL-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER AFFIRMING COMMISSIONER'S DECISION AND ENTERING JUDGMENT IN COMMISSIONER'S FAVOR** |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b). Plaintiff Norma H. seeks judicial review of the Social Security Commissioner's denial of her application for disability benefits. *See* Dkt. No. 1. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence, and therefore **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

---

[1] Commissioner Colvin is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

### A. Plaintiff's Application for Disability Benefits

Plaintiff was previously granted disability insurance benefits for a closed period from March 28, 2018 to February 4, 2020. Certified Administrative Record ("AR") [Dkt. No. 8] at 110-121. She applied for disability insurance benefits under Title II of the Social Security Act (the "Act") on July 2, 2021. *Id.* at 304-05. She alleges she has been unable to work since March 11, 2021 due to cervical degenerative disc disease, syrinx in the cervical spine, lumbar degenerative disc disease, left shoulder impingement/tendinitis, left carpal tunnel syndrome, ulnar entrapment, and severe obesity. *Id.* at 16. After her application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was attempted on July 28, 2022 but postponed because poor phone connection prevented Plaintiff from testifying. *Id.* at 49-62. The continued hearing took place on August 4, 2022 before ALJ Michael Richardson. *Id.* at 917-55. Plaintiff appeared with counsel and gave testimony. *Id.* Vocational expert Linda Tolley also testified at the August 4 hearing. *Id.* at 941-52. A medical expert was scheduled to testify as well, but he did not receive proper notice of the hearing because of a clerical error and was thus unable to testify. *Id.* at 920-21. As such, the ALJ obtained medical interrogatory responses after the August 4 hearing and proffered them to Plaintiff, who asked for a supplemental hearing in response to the proffer. *Id.* at 434, 849-57. That hearing was held on February 23, 2023. *Id.* at 27-48. Plaintiff and medical expert John F. Kwock, M.D., testified at that hearing. The ALJ issued an unfavorable decision on March 20, 2023, having concluded Plaintiff "has not been under a disability, as defined in [the Act], from March 11, 2021, through the date of [the] decision." *Id.* at 21. On January 11, 2024, the Appeals Council denied review, and the ALJ's decision became final. *See id.* at 1-3.

### B. Summary of the ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from

a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The Administration employs a sequential five-step evaluation to make this determination.[2]

The ALJ followed this five-step process in adjudicating Plaintiff's disability claim. *See generally* AR at 10-21. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 11, 2021, the alleged onset date of her disability. *Id*. at 13. At step two, the ALJ found Plaintiff had the following severe impairments: "cervical degenerative disc disease/degenerative joint disease with syrinx in the cervical spine; lumbar degenerative disc disease/degenerative joint disease, status post lumbar fusion in July 2022; left shoulder impingement/tendinitis; left carpal tunnel syndrome (hereinafter CTS) and left ulnar entrapment; and severe obesity." *Id*.[3] At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. at 14.

---

[2] The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three (if the claimant suffers from a severe impairment), whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether, given the RFC, the claimant can perform his or her past relevant work; at step five, whether the claimant can make an adjustment to other work based on his or her RFC. If the claimant is found not disabled at any step, the analysis does not proceed to the next step. *See* 20 C.F.R. § 404.1520.

[3] Although the record mentions the additional impairments of "tinnitus, closed head injury with concussion, diabetes mellitus II . . . and hepatitis C," it "does not show any examination finding which would support any significant functional limitations arising therefrom" nor "evidence of any complications as a result of these alleged impairments." AR at 14. The ALJ thus deemed these impairments non-severe because they caused no "significant limitation in [Plaintiff's] ability to do basic work activities." *Id;* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.")

At step four, the ALJ determined that despite her impairments, Plaintiff could:

> perform light work[4] as defined in 20 CFR [§] 404.1567(b) except: She is unable to climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She is able to frequently push/pull, reach overhead, and handle, finger, and feel with the non-dominant left upper extremity. She is able to occasionally operate foot pedals with her left lower extremity. She must avoid concentrated exposure to extreme temperatures and hazards such as unprotected heights and dangerous moving machinery. She also requires a sit/stand option allowing her to sit for five minutes for any standing and/or walking of 30 minutes, while remaining on task.

AR at 14.

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the "longitudinal record does not support a finding that the claimant's impairments are so severe as to be disabling." *Id.* at 15. The ALJ cited evidence in the record in support of his finding that "the record reveals stable findings" as to Plaintiff's spinal impairments. *Id.* at 15-16. For example, treatment notes and X-rays from Kaiser Permanente between January 2021 and March 2021 reveal that Plaintiff had normal gait, that there was "no evidence of instability" in Plaintiff's lumbar spine, and that the treating physician was hesitant to recommend surgical intervention. *Id.* at 16 (citing *id.* at 707-18, 736-39, 752-73). Treatment notes from Dr. Ronald Brizzie between June and September 2021 reveal that, although Plaintiff had mild to moderate tenderness during her cervical and lumbar spine exams, she had 5/5 strength and intact sensation throughout, intact deep tendon reflexes, and an "overall

---

[4]   "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). A person who is capable of light work is also considered capable of sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

prognosis" of "fair with the appropriate treatment." *Id.* at 16 (citing *id.* at 530-34, 556-59). Records from Palomar Medical Center reveal Plaintiff underwent L5-S1 diskectomy in July 2022. *Id.* at 16 (citing *id.* at 806-10). The ALJ noted the record as a whole reveals no evidence of further treatment for Plaintiff's degenerative disc disease. *Id.* at 16. The ALJ found this evidence supported the residual functional capacity described above. *Id.*

As to Plaintiff's left shoulder impingement/tendinitis, left CTS, and left ulnar entrapment, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of her left upper extremity impairments . . . inconsistent with the record." *Id.* at 16-17. Treatment notes from Dr. Brizzie between June 2021 and June 2022 reveal Plaintiff had normal sensation and strength throughout her bilateral upper extremities. *Id.* at 17 (citing *id.* at 530-34). Notes from Vascular Associates of San Diego in June 2022 reveal 5/5 motor and intact sensation in both the upper and lower extremities. *Id.* at 17 (citing *id.* at 807-08).

The ALJ also considered medical opinion evidence, Plaintiff's subjective testimony regarding her limitations, and prior administrative medical findings in the record. *Id.* at 15-21. The ALJ found partially persuasive the findings of medical expert Dr. Kwock, whose testimony at the February 23, 2023 hearing indicated a residual functional capacity that was "somewhat less restricting than the record supports." *Id.* at 18 (citing *id.* at 33-42). The ALJ found the findings of state agency medical consultant Dr. M. Gleason similarly "somewhat less restricting than the record supports" and, thus, also only partially persuasive. *Id.* at 18. Testimony by Dr. Brizzie that Plaintiff can sit for two hours in an eight-hour workday, needs to take unscheduled breaks every 10-15 minutes for 10 to 15 minutes, would be off-task more than 25 percent during an eight-hour workday, and would be likely to miss more than four days of work a month was unpersuasive given other evidence in the record, including, as discussed above, Dr. Brizzie's own treatment notes. *Id.* at 18. The ALJ considered responses to a medical interrogatory completed by Dr. Alek Emami and found them partially persuasive. *Id.* "Dr. Emami's opinion that the claimant's impairments do not meet or equal any listing is consistent with . . . the record," but the

remainder of the interrogatory responses are "inadequate to truly determine the claimant's limitations regarding basic work activities." *Id.* Finally, the ALJ considered the non-medical opinions of Plaintiff's daughter-in-law. *Id.* at 19. Some aspects of those opinions—that Plaintiff can perform certain activities of daily living, such as taking care of children, taking care of finances, and spending time with others—were consistent with the record and thus persuasive. *Id.* (discussing *id.* at 347-58, 371-79). Other aspects, though, such as those opining Plaintiff is unable to perform any basic work activity, were inconsistent with the record and unpersuasive. *Id.*

Having considered the record as described above, ALJ concluded "that the claimant has a greater sustained capacity than the claimant alleges" and that "the claimant retains the capacity to perform work activities with the limitations" set forth in the RFC. *Id.* at 19. Based on the RFC and the testimony of the vocational expert, the ALJ further found at step four Plaintiff could not perform her past relevant work as a nurse. *Id.*

At step five, the ALJ found Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on the vocational expert's testimony regarding jobs which could be performed by someone with Plaintiff's RFC. *Id.* at 20-21. In so finding, the ALJ noted that although the vocational expert's testimony is "an accurate depiction of the exertional and environmental limitations outlined, the limitations related to the assessed sit/stand option, the directional reaching limits, and the erosion factors for the job numbers caused by the sit/stand option are not items that are contained" in the Dictionary of Occupational Titles ("DOT"). *Id.* at 20. The vocational expert testified as to those limits and erosion factors based on "an examination of the information contained in the [DOT], paired with her years of experience in the field of job placement." *Id.* at 20-21 (citing *id.* at 43-45).

Based on the foregoing five-step analysis, the ALJ concluded Plaintiff had not been under a disability within the meaning of the Act during the relevant period. *Id.* at 21.

/ / /

/ / /

## II.

## DISPUTED ISSUES

Plaintiff identifies four disputed issues on appeal, as follows:

1) Whether the ALJ was required to address the 2020 decision;

2) Whether the ALJ properly considered Dr. Brizzie's opinion;

3) Whether the Commissioner met his burden of proof at Step Five; and

4) Whether the ALJ gave clear and convincing reasons to "disregard" Plaintiff's subjective symptom testimony.

Dkt. No. 14 at 5. Plaintiff also asserts as a fifth disputed issue "whether the ALJ addressed the combination of impairments in the RFC with a sit stand option requiring the ability to stay on task." *Id.* at 10. But this section of Plaintiff's brief makes the same argument as the section asserting the Commissioner did not meet his burden of proof at Step Five. *See id.* at 11-12 (alleging "the ALJ's findings are not supported by substantial evidence" because "the ALJ has not resolved the conflict between sit stand options and unskilled light work"); *id.* at 12-13 (alleging "the ALJ's position is not supported by substantial evidence" because the ALJ "has not resolved the conflict between light work with a sit and stand option"). Because these two sections identify the same issue, and because resolution of both turns on the same alleged conflict, the Court addresses them together.

## III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023).[5] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind

---

[5] All citations, internal quotation marks, and subsequent history are omitted, and emphasis is added, unless otherwise noted.

7

might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* The Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

## IV.

## DISCUSSION

### A. Plaintiff Has Not Demonstrated Harmful Error

With the foregoing legal standards in mind, the Court addresses each of the disputed issues above.

*1. The 2020 Decision for a Closed Period of Benefits*

As a first charge of error, Plaintiff relies upon *Lambert v. Saul* to assert that the favorable decision in 2020 "gave rise to [a] presumption of disability" that can only be rebutted by medical evidence that shows improvement of Plaintiff's condition. Dkt. No. 14 at 6-7 (citing 980 F.3d 1266, 1270 (9th Cir. 2020)). Plaintiff asserts that, because the ALJ did not explicitly consider the 2020 decision and did not cite evidence to show improvement, his findings are not supported by substantial evidence. The Court disagrees.

Plaintiff misstates the holding of *Lambert*. The Ninth Circuit did not hold that a previous favorable decision gives rise to a presumption of continued disability. To the contrary, "there is no presumption of continuing disability under the Social Security Act." *Lambert*, 980 F.3d at 1268. The language Plaintiff quotes in her brief is from *Patti v. Schweiker*, 669 F.2d 582, 586-87 (9th Cir. 1982); the Ninth Circuit only included that language in *Lambert* to disavow it. The ALJ did not err in not applying a presumption of continuing disability because of Plaintiff's earlier disability determination.

Plaintiff also asserts, in one sentence and a footnote in this section of her brief, that she is entitled "to a trial work period of nine months and 36 months of [re]entitlement" under 20 CFR § 404.1592(a). Dkt. No. 14 at 6. Plaintiff argues "[t]he ALJ in 2020 awarded disability for a closed period based on [Plaintiff's] statement she was going to return to work as she found a job with accommodations. That work attempt did not eliminate her disability, but gave rise to a trial work period." *Id.*

Trial work and reentitlement periods are not at issue here because Plaintiff was awarded a closed period of benefits, and because the ALJ determined at step one that Plaintiff had not engaged in any substantial gainful activity from the alleged onset date onward. They come into play when an ALJ must determine whether a claimant who is receiving disability benefits has terminated his entitlement to those benefits by engaging in work. *See A.S. v. Saul*, No. 20-CV-00281-JCS, 2021 WL 1087473, at *16 (N.D. Cal. Mar. 22, 2021) ("Before the Commissioner determines that an individual is no longer disabled because he or she is engaged in substantial gainful activity, the Commissioner first considers whether the individual is entitled to a trial work period" or to a reentitlement period.); *Roam v. Astrue*, No. C07-5662KLS, 2008 WL 4181680, at *4 (W.D. Wash. Sept. 4, 2008) (noting that trial work and reentitlement periods are relevant "to substantial gainful activity determinations made at step one"); *Willis v. Berryhill*, No. CV 16-5898 JC, 2017 WL 4119054, at *2 (C.D. Cal. Sept. 15, 2017) (noting that reentitlement periods are meant for "beneficiaries who complete a full nine-month trial work period and still have a disabling impairment"). Plaintiff has not cited any authority

allowing claimants to enter a trial work or reentitlement period after their closed period of benefits has ended but before they are again entitled to benefits. Based on the Court's research, the rule is the opposite. *See* 20 C.F.R. § 404.1592(d)(1) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits."); *Newton v. Charter*, 92 F.3d 668, 693 (8th Cir. 1996) ("[T]o be entitled to a trial work period, a claimant must be entitled to disability insurance benefits."); *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) ("[A] trial work period only applies after a person has been adjudged disabled."); *Cieutat v. Bowen*, 824 F.2d 348, 358 (5th Cir. 1987) (noting that 42 U.S.C. § 422(c), which defines trial work, provides that "a period of trial work . . . shall begin with the month in which he becomes entitled to disability insurance benefits"). Accordingly, the Court finds that Plaintiff is not entitled to a trial work period[6] or a reentitlement period because she is not entitled to disability insurance benefits.

    2. *Dr. Brizzie's Medical Opinion*

As a second charge of error, Plaintiff states the ALJ's "rejection of treating physician Dr. Brizzle's [sic] opinion is not by the record." Dkt. No. 14 at 9. As an initial matter, the Court notes that Plaintiff fails to plead how this alleged error is harmful; she asserts only that "the record does not support the ALJ" and connects that to Plaintiff's inability to perform the jobs that the ALJ determined she could perform. *Id.* at 9-10. The Court discusses this argument in Section Three below and concludes this argument is unavailing.

---

[6] The Court also notes that even if Plaintiff was entitled to a trial work period, it would have expired by now. A trial work period is "a period during which you may test your ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). It begins "with the month in which you become entitled to disability insurance benefits" and ends with (1) the "9th month . . . in which you have performed services within a period of 60 consecutive months . . . or (2) [t]he month in which new evidence, other than evidence relating to any work you did during the trial work period, shows that you are not disabled." *Id.* § 404.1592(e). The last day Plaintiff was entitled to disability insurance benefits was February 4, 2020. AR at 121. Plaintiff worked from February 5, 2020 until March 11, 2021, the alleged onset date. *Id.* at 13; 304-05. That is more than the nine months of performing services allowed by 20 C.F.R. § 404.1592(e).

Nevertheless, the Court now turns to Plaintiff's criticism of the ALJ's assessment of Dr. Brizzie. The Court finds no error with the ALJ's assessment.

Plaintiff specifically takes issue with the ALJ's finding that the "residual functional capacity opined by Dr. Brizzie is more restricting than the record supports." *Id.* at 9 (citing AR at 18). Dr. Brizzie set forth the following RFC for Plaintiff:

> "[T]he claimant is able to lift and/or carry up to 10 pounds occasionally. She is able to sit 15 min at one time and sit for about two hours in an 8-hour workday. She is able to stand 10 to 15 min at one time and stand and/or walk for less than two hours in an 8-hour workday. She is able to walk two to three blocks without pain. She needs to change positions at will. He needs periods of walking around during an 8-hour workday. She needs to take unscheduled breaks 10 to 15 min for 10 to 15 min. She is unable to climb ladders or crouch/squat. She is able to rarely twist, stoop/bend, and climb stairs. She would be off-task more than 25 percent during an 8-hour workday. She is likely to miss more than 4 days of work per month.

AR at 18 (citing AR at 791-95).

The ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Said differently, the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are "supportability" (whether the provider supported their opinion with citations to objective findings) and "consistency" (whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *id.* § 404.1520c(c)(1) (defining "supportability" and "consistency").

The ALJ rationally found Dr. Brizzie's opinion unpersuasive based on his determination that it was neither supported by, nor consistent with, the medical evidence in the record. AR at 18. The ALJ found that the limitations opined by Dr. Brizzie were more restrictive than what Dr. Brizzie's own progress notes and findings supported. *Id.* at 18. Plaintiff had normal sensation and strength in her bilateral upper extremities. *Id.*

(citing *id.* at 530-34). She had decreased range of motion of the cervical and lumbar spine, but 5/5 strength and intact sensation throughout, intact deep tendon reflexes, and an "overall prognosis" of "fair with the appropriate treatment." *Id.* at 18 (citing *id.* at 530-34, 556-59). She had negative straight leg raise bilaterally and normal gait. *Id.* at 18 (citing *id.* at 530-34, 767-76). The ALJ also noted that, although Plaintiff underwent surgery in July 2022, "the record reveals no evidence of any further treatment for her neck and back pain after the successful surgery." *Id.* at 18 (citing *id.* at 806-08). The ALJ identified specific, objective evidence in the record—including Dr. Brizzie's own treatment notes—undermining the severity of restrictions found in Dr. Brizzie's assessment. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) (A medical opinion is properly found unpersuasive where the provider assesses limitations that are "contradicted [by] his own treatment records."); *Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1143 (E.D. Wash. 2022) (noting the ALJ "is not obliged to credit medical opinions that are unsupported by the medical source's own data"). Thus, the ALJ did not err in discounting Dr. Brizzie's opinion for lack of consistency and supportability.

### 3. Step Five Determination

As a third charge of error, Plaintiff asserts the Commissioner did not meet his burden at step five of the sequential analysis to demonstrate that other jobs exist in the national economy that Plaintiff could perform, given her RFC as determined by the ALJ. Dkt. No. 14 at 10-13. The Court disagrees.

Plaintiff asserts the vocational expert's testimony is inaccurate because it fails to consider that the RFC requires "a sit/stand option allowing [Plaintiff] to sit for five minutes for any standing and/or walking of 30 minutes, while remaining on task." *Id.* at 11. Specifically, Plaintiff contends it would be impossible for her to perform the jobs the ALJ found existed in the national economy that someone with Plaintiff's RFC could perform. *See id.* at 10 ("It is difficult to see how an assembler of small parts would be able to stand and remain on task if the set up was for standing or vice versa".); *id.* at 11 ("It is difficult to understand how this sit stand option requiring [Plaintiff] to stay on task is practical.").

Plaintiff also invokes *De Oses v. Kijakazi* for the idea that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Id.* at 11 (quoting No. 22-CV-01201-VCF, 2023 WL 2682351, at *6-7 (D. Nev. Mar. 29, 2023) (discussing SSR 83-12)). Finally, Plaintiff appears to allege a conflict between the vocational expert's testimony and the DOT because "the DOT does not include information as to sit stand options." Dkt. No. 14 at 10.

A vocational expert's "expert testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020); *see also Dewey v. Colvin*, 650 Fed. App'x 512, 514 (9th Cir. 2016) (holding ALJ did not err by relying on vocational expert's testimony that there were jobs the plaintiff could perform even though he required a sit/stand option and use of other mobility aids); *Lyman M. v. Comm'r of Soc. Sec.*, No. C20-5375-MLP, 2021 WL 1611341, at *2 (W.D. Wash. Apr. 26, 2021) (Although "many light, unskilled jobs do not ordinarily permit an employee to sit or stand at will," the ALJ's assessment was proper because "the VE identified three jobs that do accommodate such a limitation.").

As in *Dewey* and *Lyman M.*, so too here did the ALJ properly rely on vocational expert testimony that considered all the limitations identified in an RFC. *See* AR at 946 ("[S]he would need a sit/stand option, allowing her to sit for 5 minutes of any standing or walking of 30 minutes, while remaining on task. . . . Would any of those jobs still work, then?"); *id.* at 948 ("[B]ut what if we restricted her overhead reaching with her left, upper extremity to only occasional? Would that make a difference?"); *id.* ("If we were to reduce the standing or walking to only two hours, as opposed to the six hours, would any of those jobs still remain?"); *id.* at 949 ("[I]f I were to . . . change the lifting and carrying to only ten pounds . . . none of those light jobs would remain, correct?"). Considering these limitations, the vocational expert testified that Plaintiff would be able to perform the jobs of price marker; assembler, small products, II; and cashier II. *Id.* at 947. The vocational expert testified further that these jobs existed in significant numbers in the national

economy, even after erosion due to the sit/stand option. *Id.* at 947-49 (testifying there would be 30,000 positions available as a price marker, 7,000 positions available as a small products assembler, and 100,000 positions available as a cashier).

The Court next turns to Plaintiff's arguments that (1) the Court should find similarly to *De Oses*, (2) SSR 83-12 requires a finding of harmful error, and (3) the Commissioner has not resolved a conflict between vocational expert testimony and the DOT. First, *De Oses* is inapposite. There, not only was the claimant's motion to remand unopposed, but the ALJ's determination that there were jobs the claimant could perform was contradicted by vocational expert testimony. *De Oses*, 2023 WL 2682351 at *2-3. Indeed, the court concluded that the ALJ "erred either in transcribing the RFC or interpreting the vocational expert's testimony," as the "VE testified that someone limited to the sit/stand option detailed in the ALJ's finding of residual functional capacity could *not* perform the three light occupations relied upon by the ALJ to find [the claimant] not disabled." *Id.* at 3. Second, SSR 83-12 states that, in cases where there are sit/stand limitations on the ability to perform light work, the vocational expert "should be consulted to clarify the implications for the occupational base." SSR 83-12 at *4. As discussed above, the ALJ did just that. And third, although the DOT does not include information as to sit/stand options, the ALJ resolved any such conflict by relying on the vocational expert's testimony. The ALJ asked "for all of those types of items that I have given you in the hypothetical that are not specifically addressed by the DOT, you are relying upon what?" and "the erosion factors that you employed . . . for the sit/stand, or the standing or walking only two hours, needing a chair, what are you basing that on?" AR at 951-52. The vocational expert testified she was relying on her "experience in the rehab field of over 25 years plus, primarily with placing individuals in jobs, doing job analyses, job descriptions . . . observing jobs, asking employers a lot of questions . . . [and] basing it on labor market research, meaning labor market survey phone calls, primarily." This is sufficient to resolve any alleged conflict. *See Buckner-Larkin v. Astrue*, 450 Fed. App'x 626, 628 (9th Cir. 2011) (finding alleged conflict between DOT and sit/stand option resolved because vocational expert based his

1  determination on "his own labor market surveys, experience, and research").

2  For these reasons, the Court finds no error in the ALJ's determination of Plaintiff's
3  RFC and concludes the Commissioner has met his burden at step five.

4  *4. The ALJ's Rejection of Plaintiff's Subjective Symptom Testimony*

5  As a fourth charge of error, Plaintiff asserts the ALJ failed to provide clear and
6  convincing reasons to reject her subjective testimony. Plaintiff asserts the "ALJ has not
7  provided clear citations to conflicts between [Plaintiff's] statements and the medical
8  evidence," instead asking "this court to go through his decision and pick sentences that
9  might support his negation of [Plaintiff's] statements." Dkt. No. 14 at 14-15. The Court
10 disagrees.

11 The ALJ "is not required to believe every allegation of disabling pain." *Molina*,
12 674 F.3d at 1112. However, in the absence of evidence of malingering, an ALJ must offer
13 "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony
14 regarding the limitations caused by his impairment. *See Ferguson v. O'Malley*, 95 F.4th
15 1194, 1199 (9th Cir. 2024); *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022)
16 ("an adverse credibility finding must be based on clear and convincing reasons").

17 After reviewing the evidence in the record, the ALJ concluded Plaintiff's medically
18 determinable impairments could reasonably be expected to cause many of her alleged
19 physical symptoms. AR at 15. Based on his review of the record, however, the ALJ found
20 Plaintiff's "statements about the intensity, persistence, and limiting effects of her"
21 impairments "are inconsistent with the record because, as discussed in detail below, the
22 record reveals stable findings which show that the claimant's subjective complaints are
23 disproportionate to objective findings." *Id.* at 16-17.

24 The ALJ found Plaintiff's allegations of disabling pain caused by degenerative disc
25 disease of the cervical and lumbar spine undermined by the objective medical evidence.
26 *See id.* at 16 (discussing *id.* at 147-158, 175-202) (treatment notes from Kaiser Permanente
27 indicating that Plaintiff denied numbness or weakness and had normal gait and that X-rays
28 of Plaintiff's lumbar spine revealed no evidence of instability); *id.* at 16 (discussing *id.* at

763-76) (treatment notes from Dr. Brizzie indicating that Plaintiff had 5/5 sensation and intact sensation throughout the cervical and lumbar spine, with "fair prognosis with appropriate treatment"); *id.* at 16 (discussing *id.* at 796-808) (treatment notes indicating Plaintiff had full lumbar spine extension with no pain, 4+/5 strength in left lower extremity but intact strength and sensation otherwise, and no evidence of further treatment after July 2022 surgery). The Court finds these are sufficiently clear and convincing reasons for discounting Plaintiff's subjective testimony under prevailing Ninth Circuit standards.[7] The ALJ similarly found Plaintiff's allegations of disabling pain caused by left shoulder impingement/tendinitis, left CTS, and left ulnar entrapment undermined by medical evidence in the record. *See id.* at 17 (discussing *id.* at 525-34, 551-60, 763-76) (June 2021 treatment notes indicating Plaintiff had normal strength and sensation in the bilateral upper extremities and June 2022 treatment notes indicating Plaintiff had 5/5 motor strength and intact sensation in the bilateral upper extremities).

Based on the foregoing, the Court finds the ALJ provided "specific, clear and convincing" reasons for his credibility determination, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at 739, and "explain[ing] why the medical evidence is *inconsistent* with the claimant's subjective testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in original). The Court is therefore persuaded that the ALJ did not "arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In other words, the ALJ "show[ed] his work." *Smartt*, 53 F.4th at 499 (holding that "the clear and convincing standard

---

[7] *See, e.g., Smartt*, 53 F.4th at 498 (noting that "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony") (collecting cases) (emphasis in original); *Molina*, 674 F.3d at 1114 (finding the ALJ may reasonably conclude that "the level or frequency of treatment" is "inconsistent with the level of complaints"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (upholding ALJ's finding that subjective complaints of pain were contradicted by normal examination findings).

. . . requires an ALJ to show his work"). The Court finds the ALJ's credibility determination is adequately supported, and declines to "engage in second-guessing" that determination. *See Thomas*, 278 F.3d at 959; *see also Brown-Hunter*, 806 F.3d at 494 ("[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review.").

Plaintiff also appears to be asserting that the "credit-as-true" doctrine requires the Court to direct the Commissioner to find Plaintiff disabled. Dkt. No. 14 at 16-17. Plaintiff's argument is as follows:

> "The Credit-As-True doctrine warrants that where the ALJ fails to provide specific, clear and convincing reasons for disregarding relevant evidence of disability, and there exists no serious doubt that the Plaintiff is disabled. As the case be remanded due to the absence of legally sufficient reasons, lack of substantial evidence, and failure to provide clear and convincing reasons for his findings [sic]."

*Id.* at 16.

The credit-as-true rule "permits, but does not require, a direct award of benefits on review but only where . . . the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Three elements must be met for the credit-as-true rule to apply: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence . . . and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. But "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon*, 880 F.3d at 1044 (9th Cir. 2017); *accord Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (noting that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

/ / /

The credit-as-true rule does not apply here. Although Plaintiff asserts that she "has provided testimony which has not been contradicted," this is not the case. As discussed above, the ALJ has provided legally sufficient reasons to reject Plaintiff's subjective testimony, which prohibits application of the rule.

**B. Substantial Evidence Supports the ALJ's Decision**

Having found no legal error in the ALJ's treatment of the record or formulation of Plaintiff's RFC, the Court turns to the question of whether the RFC, and the ALJ's conclusion based on the RFC that Plaintiff was not disabled, is supported by substantial evidence. The Court has independently assessed the entire record, "weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision. The Court summarizes that evidence below.

The record confirms Plaintiff suffers from cervical degenerative disc disease/degenerative joint disease with syrinx in the cervical spine; lumbar degenerative disc disease/degenerative joint disease; left shoulder impingement/tendinitis; left carpal tunnel syndrome; left ulnar entrapment; and severe obesity. *See, e.g.*, AR at 521-23, 555-58, 679-82, 767-76, 796-804. MRIs and X-rays throughout the record revealed degenerative disc disease in both the cervical and lumbar spine, and a syrinx within the cord at C7-T10 of the cervical spine. *Id.* at 147-58, 175-202, 525-34. The record reflects frequent complaints of pain associated with these conditions. *Id.* at 304-05, 327-346, 791-95. Plaintiff underwent L5-S1 diskectomy in July 2022 with "no complications," and the record reveals no evidence of any further treatment for her degenerative disc disease. *Id.* at 806-09.

Plaintiff reported in her Adult Function Report that her daily activities included tending to her personal hygiene (although doing so causes some discomfort, such as when she puts on clothes or bathes), preparing simple meals, running errands around the house (washing dishes, cleaning countertops, doing the laundry, grocery shopping), and feeding her pets. *Id.* at 339-40. She reports that she cares for her granddaughter when her granddaughter's mom has appointments or goes out. *Id.* at 339. Plaintiff's daughter-in-

law completed a third-party Adult Function Report. *Id.* at 350-60. The daughter-in-law reports observing or helping Plaintiff with many of the activities Plaintiff described above. *Id.* At both the July 28 and August 8, 2022 hearings, Plaintiff testified that she lived with her son's family and that she was still capable of driving. *Id.* at 55, 925.

Medical records show that Plaintiff had normal gait and "no evidence of instability" in her lumbar spine. *Id.* at 707-18, 736-39. Although she had mild to moderate tenderness in her cervical and lumbar spine, she had 5/5 strength and intact sensation throughout, intact deep tendon reflexes, and an "overall prognosis" of "fair with appropriate treatment." *Id.* at 530-34, 556-59. Plaintiff had normal strength and sensation throughout her bilateral upper and lower extremities, except for one record evidencing 4+/5 strength in her left lower extremity in July 2022. *Id.* at 796-808.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's RFC, and the subsequent determination based on Plaintiff's RFC that she was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.
## CONCLUSION

For the foregoing reasons, the Court concludes the ALJ's decision is free of legal error and that his determination that Plaintiff is not disabled is supported by substantial evidence in the record. The undersigned accordingly **RECOMMENDS** that the District Court issue an order: (1) approving and adopting this Report and Recommendation in its entirety; (2) denying Plaintiff's request for remand for an award of benefits; (3) affirming the decision of the Commissioner; and (4) directing that judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **January 20, 2025**. Any response to a party's objections must be filed by not later than **January 27, 2025**. Failure to timely file objections may waive the right to raise those objections on appeal. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: December 30, 2024

Hon. David D. Leshner
United States Magistrate Judge